## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) CHAPTER 11 |
| | ) |
| FEDDERS NORTH AMERICA, INC., | ) Case No. 07-11176 (BLS) |
| et al., | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| OFFICIAL COMMITTEE OF | ) |
| UNSECURED CREDITORS OF | ) |
| FEDDERS NORTH AMERICA, INC., | ) |
| et al., on behalf of the | ) |
| Debtors' Estates, | ) Adversary No. 08-50549 (BLS) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Related to Doc. No: 71, 86 and 91 |
| GOLDMAN SACHS CREDIT | ) |
| PARTNERS L.P., et al., | ) |
| Defendants. | ) |

### OPINION[1]

| | |
|---|---|
| Rachel B. Mersky | Stephen M. Miller |
| Monzack Mersky McLaughlin & | Brett D. Fallon |
| Browder, P.A. | Morris James LLP |
| 1201 N. Orange Street, Ste 400 | 500 Delaware Avenue, Ste 1500 |
| Wilmington, DE 19801 | P.O. Box 2306 |
|    -and- | Wilmington, DE 19899-2306 |
| Sharon L. Levine |    -and- |
| Jeffery J. Wild | Mark M. Maloney |
| Lowenstein Sandler PC | Jonathan W. Jordan |
| 65 Livingston Avenue | 1180 Peachtree Street |
| Rosemand, NJ 07068 | Atlanta, GA 30309 |
| | |
| *Counsel for the General* | *Counsel for General Electric* |
| *Unsecured Creditors* | *Capital Corporation* |
| *Liquidating Trust* | |

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Before the Court is a motion for judgment on the pleadings filed by defendant General Electric Capital Corporation ("GECC") [Docket No. 71].  For the following reasons, the Court will grant the motion.

## I. BACKGROUND

This adversary proceeding was commenced by a complaint (the "Complaint") filed by the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy proceeding of Fedders North America, Inc. ("Fedders"), a designer and manufacturer of air conditioning systems.  The Committee was granted derivative standing by this Court to pursue a host of claims against GECC, Bank of America, N.A., Highland Capital Management, L.P., and Goldman Sachs Credit Partners L.P. (hereinafter referred to collectively as the "Lenders"), and a number of former officers and directors of Fedders (hereinafter referred to collectively as the "Individual Defendants"). Pursuant to the Chapter 11 plan of liquidation confirmed by this Court on August 22, 2008, the claims asserted in the adversary Complaint were assigned by the Committee to the GUC Liquidating Trust (the "Trust" or the "Plaintiff").

The Complaint alleges numerous causes of action against the Lenders and Individual Defendants.  These alleged causes of action derive from three decisions made by Fedders and approved by its board of directors.  The first two decisions, relating to

2

severance and employment agreements, are relevant only to the Individual Defendants and thus do not bear upon this motion.

The third decision, relating to Fedders' decision to enter into certain new loans agreements in 2007, is relevant here. During the period from 1996 to 2006, Fedders attempted to expand its traditional residential room air conditioner business to include commercial HVAC and indoor air quality businesses. This pursuit of growth caused the company to incur substantial debt. By February 2007, Fedders was in default of its obligations under a $75 million secured credit facility with Wachovia Bank ("Wachovia"). Consequently, Wachovia began to limit Fedders' ability to borrow money under the agreement. This led to an inability to access new cash. The liquidity crisis threatened to prevent the company from building inventory and preparing for the upcoming 2007 summer selling season.

Fedders responded to this challenge by initiating a search for replacement financing. This effort resulted in two new credit facilities aggregating to $90 million being issued to the company on March 20, 2007. The first was a $50 million revolving facility (the "Revolving Facility") with Bank of America as administrative agent, collateral agent and lender, and defendant GECC as documentation agent and lender. The second was a $40 million term facility (the "Term Facility") with Goldman Sachs as administrative agent, collateral agent and lender. The Lenders

3

received certain loan and placement fees under these new financing agreements.

The new financing was used to pay off the defaulted Wachovia loan and to provide working capital prior to the summer selling season. It was not enough to save the company, however. It is clear that by May of 2007, Fedders was in default of certain loan covenants pertaining to its earnings that were included in the March 30 loans. Fedders continued to operate through the summer, but its financial condition only worsened. Fedders and its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on August 22, 2007.

Based on these facts, the Complaint asserts sixteen causes of action against either the Lenders, some or all of the Individual Defendants, or both. Count 1 is a claim against certain insiders of Fedders for breach of fiduciary duty. Count 2 asserts a claim against Fedders' outside directors for breach of fiduciary duty. Count 3 is a claim asserted against the Lenders for aiding and abetting breach of fiduciary duty. Counts 4 and 5 seek the avoidance and recovery of fraudulent conveyances allegedly made to both the Lenders and the Individual Defendants, and Count 6 asserts a claim for aiding and abetting a fraudulent conveyance against the Lenders and the Individual Defendants. Count 7 is a claim against the Individual Defendants for waste. Counts 8 and 9 assert claims of tortious interference with

4

contractual relations and tortious interference with prospective business advantage, both against the Lenders. Count 10 asserts a claim for "improvident lending" against the Lenders. Count 11 asserts a claim for unjust enrichment, apparently against both the Lenders and Individual Defendants. Count 12 advances a claim against the Lenders for breach of the covenants of good faith and fair dealing that are inherent in every contract. Count 13 asserts a claim against the Lenders for equitable subordination. Count 14 seeks to recharacterize the loans made by the Lenders as equity investments. Counts 15, 16, and 17, for repayment of professional fees, surcharge and lien avoidance, and a claim objection, were voluntarily dismissed or released under the Plan.

The Lenders filed motions to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) [Docket Nos. 6, 8, 11, and 12]. By Opinion and Order dated May 21, 2009, this Court granted the motions in part and denied them in part. See Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.), 405 B.R. 527 (Bankr. D. Del. 2009).[2] All claims against the Lenders were

---

[2] More specifically, this Court granted the motion to dismiss with respect to the following counts: Count 1 (breach of fiduciary duty, against the non-director insider defendants); Count 2 (breach of fiduciary duty, other than the duty of care, against outside directors except Herbert A. Morey); Count 4 (fraudulent conveyance, against all defendants except Salvatore Giordano, Jr.); Count 5 (state-law fraudulent conveyance, against all defendants except Salvatore Giordano, Jr.); Count 6 (aiding and abetting fraudulent conveyance, against all defendants);

dismissed except for Count 3, which is the aiding and abetting breach of fiduciary duty claim.  The underlying breach of fiduciary duty claim was dismissed against all except three directors (the "Insider Directors").  GECC now stands accused of having aided and abetted the breach of the duty of care of the Insider Directors.  The merits of this claim are analyzed below.

## II. <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A),(K) and (O).

## III. <u>STANDARD OF REVIEW</u>

GECC seeks dismissal of Count 3 pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "after the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

The standard for a Rule 12(c) motion is the same as the

---

Count 7 (corporate waste, against all defendants); Counts 8 and 9 (tortious interference with contractual relations and tortious interference with prospective business advantage, both against the Lenders); Count 10 (improvident lending, against the Lenders); Count 11 (unjust enrichment, against all defendants); Count 12 (covenant of good faith and fair dealing, against the Lenders); Count 13 (equitable subordination, against the Lenders); Count 14 (recharacterization, against the Lenders).

standard for a Rule 12(b)(6) motion.  In re G-I Holdings, Inc.,
328 B.R. 691, 693-94 (Bankr. D.N.J. 2005)("A Rule 12(c) motion is
governed by the same standard as a Rule 12(b)(6) motion to
dismiss for failure to state a claim upon which relief can be
granted.")(citing Children's Seashore House v. Waldman, 197 F.3d
654, 657 n.1 (3d Cir. 1999) and Turbe v. Gov't of the Virgin
Islands, 938 F.2d 427, 428 (3d Cir. 1991)).

     As noted recently by the U.S. Court of Appeals for the Third
Circuit, the standard courts apply when considering a Rule 12
motion is also related to the requirements set forth in Rule 8 of
the Federal Rules of Civil Procedure.  See Phillips v. County of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  The United States
Supreme Court recently clarified the pleading requirements of
Rule 8(a)(2) in its Ashcroft v. Iqbal decision.  129 S. Ct. 1937
(2009).  Building upon its earlier decision in Bell Atl. Corp. v.
Twombly, 550 U.S. 544 (2007), the Court held as follows:

> [T]o survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to
> state a claim to relief that is plausible on its face. A
> claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the
> misconduct alleged.

129 S. Ct. at 1949 (citations omitted).

## IV. <u>DISCUSSION</u>

A. <u>Successive Motions</u>

As indicated above, GECC's Motion follows an earlier motion to dismiss under Rule 12(b)(6), upon which this Court has already ruled (the "Rule 12(b) Motion"). Plaintiff contends that GECC's Motion is procedurally improper because the Court has already ruled upon the Rule 12(b) Motion, which raised substantially similar issues.

The text of Rule 12 contemplates the filing of a Rule 12(c) motion after a Rule 12(b) motion. Rule 12(g)(2) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion," but provides an express exception for a 12(c) motion based on the defense of failure to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(h)(2).

Numerous courts have approved the filing of successive motions to dismiss, particularly in the context of complex, multi-count litigation. <u>See, e.g.</u>, <u>Vega v. State Univ. of N.Y.</u>, 2000 WL 381430 (S.D.N.Y. Apr 13, 2000)("[A] second motion to dismiss was not unwarranted. Given the procedural complexity of this litigation . . . and the tangle of legal theories created . . . it is understandable that the first motion was unable to address all of the appropriate issues."); <u>Tatum v. R.J. Reynolds</u>

8

Tobacco Co., 2007 WL 1612580 (M.D.N.C. May 31, 2007)(allowing three successive motions to dismiss in a complex ERISA case); see also Wright v. Nordam Group, Inc., 2008 WL 802986 (N.D. Okla. March 20, 2008)(allowing second Rule 12(b)(6) motion because "defendant could have filed a motion for judgment on the pleadings under Rule 12(c)"); Womack v. Nat. Action Fin. Servs., 2007 WL 2155669 (E.D. Pa. July 25, 2007)(denying motion to supplement pending Rule 12(b)(6) motion, but directing that "defendant may yet raise the same issues by motion for judgment on the pleadings, pursuant to Rule 12(g)").

In this case, the Motion is procedurally proper.  GECC has now filed its answer, closing the pleadings.  It is therefore appropriate for GECC to file a Rule 12(c) motion directing the Court's attention to documents that were referenced in or attached to the pleadings.  See Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998)(courts may consider "the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents either are in possession of the party opposing the motion or were relied upon by that party in its pleadings").  The documents (described more fully below) which GECC relies upon in this Motion were each incorporated by reference in the Complaint or Rule 12(b) Motion, and each was attached to GECC's subsequent

answer.  Thus, the Court may consider these documents without
converting the Motion to a motion for summary judgment under Fed.
R. Civ. P. 12(d).  See Mele v. Fed. Reserve Bank of N.Y., 359
F.3d 251, 256 n.5 (3d Cir. 2004)(court may consider documents
"integral to or explicitly relied on in the complaint").

B.    Analysis

The Complaint alleges that, in entering into the Revolving
Facility and the Term Facility, Fedders' Insider Directors
breached their duty of care.  A plaintiff cannot prove a breach
of the duty of care without a showing of gross negligence.  See,
e.g., Cargill, Inc. v. JWH Special Circumstance LLC, 959 A.2d
1096, 1113 (Del. Ch. 2008) ("[A] corporate director is only
considered to have breached his duty of care in instances of
gross negligence.").  The exact behavior that will constitute
gross negligence varies based on the situation, but generally
requires directors and officers to fail to inform themselves
fully and in a deliberate manner.  See Cede & Co. v. Technicolor,
Inc., 634 A.2d 345, 368 (Del. 1993) (collecting cases explaining
the requirements established by the duty of care in a variety of
settings).  For instance, the Delaware Court of Chancery has
recently observed that gross negligence may be pled by a
complaint alleging "that a board undertook a major acquisition
without conducting due diligence, without retaining experienced
advisors, and after holding a single meeting at which management

10

made a cursory presentation." <u>Trenwick America Litigation Trust</u>
<u>v. Ernst & Young, L.L.P.</u>, 906 A.2d 168, 194 (Del. Ch. 2006),
<u>aff'd</u>, 931 A.2d 438 (Del. 2007).

In support of its breach of duty of care claims, the
Complaint pleads two facts against the Insider Directors.  First,
it alleges that they "never asked for or received any credible
financial assessment from [any party, including their financial
advisor The Blackstone Group ("Blackstone")] that the company
could be compliant with the new financing."  (Compl. at ¶ 66).
Second, the Complaint alleges that, in contrast to typical
financing agreements, the Term Facility and the Revolving
Facility did not require a "clean" opinion by Fedders' auditors,
or a finding that Fedders could be expected to stay in business
as a going concern.  (Compl. at ¶ 72).

With these allegations against Fedders' directors as a
foundation, the Complaint further alleges that the Lenders aided
and abetted this breach because they "knew that the Insiders were
engaged in breaches of fiduciary duty and other misconduct" and
they "gave substantial assistance and encouragement to the
Insiders' breaches of fiduciary duty."  (Compl. at ¶¶ 112-13).

Under Delaware law, a valid claim for aiding and abetting a
breach of fiduciary duty requires: "(1) the existence of a
fiduciary relationship; (2) proof that the fiduciary breached its
duty; (3) proof that a defendant, who is not a fiduciary,

11

knowingly participated in a breach; and (4) a showing that
damages to the plaintiff resulted from the concerted action of
the fiduciary and the nonfiduciary." Cargill, 959 A.2d at 1125.

GECC denies that it participated in, knew of or is otherwise
responsible for any breaches of fiduciary duty.  It has pointed
the Court to several provisions of the Revolving Facility's
credit agreement (the "Credit Agreement") [Docket No. 73, Ex. 1]
which contradict the allegations in the Complaint.  First, GECC
points out that "as an asset-based loan, [the Revolving Facility]
was underwritten almost entirely upon the sufficiency of Fedders'
accounts receivable and inventory and not whether Fedders could
remain a going concern."  (Motion at 8).  The Credit Agreement's
borrowing base calculation confirms that Fedders' eligible
inventories and eligible accounts (including all rights to
payment for goods sold or leased) are the primary factors that
determine the amount the Lenders would lend under the facility.
(Credit Agreement at § 2.1 et. seq.).  This undercuts the
Complaint's assumption that Fedders' solvency was or should have
been the focus of inquiry by the Lender or the Insider Directors.

GECC also argues that even if an analysis of Fedders'
solvency was required of the Insider Directors, the Credit
Agreement and the company's financial filings demonstrate that
GECC had no reason to believe that such inquiry was not in fact
undertaken.  Section 3.1(y) of the Credit Agreement requires as a

condition precedent to closing that no events of default could
exist at closing or as a result of drawing on the facility,
including the violation of any of the various financial covenants
in § 6.8.  These include interest coverage and leverage ratios,
as well as EBITDA requirements.  Section 3.1 of the Credit
Agreement also requires that Fedders provide GECC with financial
statements and a solvency certificate.

    The Credit Agreement also provides for affirmative
representations and warranties by Fedders, including the
following: Fedders' financial statements were GAAP-compliant;
Fedders financial projections were believed by management to be
reasonable and attainable; Fedders was solvent and would continue
to be solvent.  (Credit Agreement at §§ 4.7, 4.8, and 4.22).

    Further, the Credit Agreement contains affirmative
covenants, including a covenant that Fedders will provide GECC
with historical and projected financial statements and a report
from Fedders' outside auditors stating that the historical
statements comply with GAAP and that the auditors have not found
any event of default under the Credit Agreement.

    All of these provisions contradict the Complaint's
contention that GECC "knew that the Insiders were engaged in
breaches of fiduciary duty and other misconduct." (Compl. at ¶
112).  Inasmuch as Fedders represented to and covenanted with
GECC that it met and would continue to meet specific solvency

requirements, it is difficult to see how GECC "knowingly participated in a breach" as required under Cargill.

Fedders' SEC filings also suggest that GECC had reasonable grounds to believe that Fedders' directors undertook sufficient investigation to understand the content of the Credit Agreement. In its March 26, 2007 Form 8-K, Fedders summarizes the terms of the Revolving Facility, including its interest rate, maturity, covenants, and events of default.  In its 2006 Form 10-K, Fedders explains that the Revolving Facility was used to repay the Wachovia loan (under which it was in default), and to provide for the company's working capital needs.  Though the Complaint criticizes these disclosures as inadequate because some numbers were redacted for confidentiality purposes, requests to the SEC for confidential treatment are both allowed under U.S. securities laws and regularly granted by the SEC, and there are no facts alleged in the Complaint to indicate that the request in this case was done for an improper reason.

The Complaint pleads no specific facts to demonstrate that GECC knowingly participated in a breach.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to support a claim under Iqbal.  129 S. Ct. at 1949.  This is especially true here, where the loan documents, on their face, contradict the conclusory allegations made.

In addition, Plaintiff's complaint fails to satisfy the fourth element of an aiding and abetting breach of fiduciary duty claim under <u>Cargill</u>, which is that "damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary." 959 A.2d at 1125. In fact, the Complaint demonstrates that Fedders received funds to pay off an existing credit facility that was in default and stay in business through the summer selling season. The facts pled in the Complaint therefore support the conclusion that Fedders was benefitted by the loans at least as readily as they support the conclusion that Fedders was harmed thereby.

## IV. <u>CONCLUSION</u>

In sum, even assuming <u>arguendo</u> that Fedders' Inside Directors breached their duty of care, the Complaint does not contain sufficient factual matter, accepted as true, to support a plausible claim that GECC knowingly participated in a breach that damaged the Plaintiff. <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949. GECC's Motion will therefore be granted. Plaintiff has filed a cross-motion to deny GECC reimbursement for legal expenses associated with the Motion. For the reasons discussed above, the Court does not agree with the Trust that GECC's Motion is abusive or duplicative, and accordingly the cross-motion will be denied.

15

Appropriate orders follow.

By the Court,

_____
Dated: January 22, 2010                Brendan Linehan Shannon
                                       United States Bankruptcy Judge